The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

ALLIED AVIATION SERVICE CO.,

Respondent.

No. 21-mc-104-BJR

**MEMORANDUM OPINION OF SPECIAL MASTER RE: MOTION TO DISMISS FOR LACK OF JURISDICTION**

## I.     INTRODUCTION

On April 14, 2021, Petitioner National Labor Relations Board ("NLRB" or the "Board") filed a "Petition for Adjudication in Civil Contempt" in the U.S. Court of Appeals for the District of Columbia, seeking a contempt sanction against Respondent Allied Aviation Service Company ("Allied"). Dkt. No. 12 ("Petition"). In the Petition, NLRB alleges that Allied has "failed to promptly respond to the Union's requests to meet, unilaterally altered terms of employment for the bargaining unit, and engaged in a pattern of overall bad-faith bargaining," thereby failing to comply with the D.C. Circuit Court's judgment in *Allied Aviation Service Company v. NLRB*, 854 F.3d 55, 59 (D.C. Cir. 2017) ("*Allied Aviation*" or the "Judgment"). Pet. at 1. That Judgment enforced an order of the NLRB directing Allied to recognize and bargain with Local 553,

International Brotherhood of Teamsters, AFL-CIO (the "Union") as the exclusive collective-bargaining representative of certain Allied fuel service workers employed at Newark Liberty International Airport.[1] *See Allied Aviation Serv. Co. of New Jersey & Loc. 553, Int'l Bhd. of Teamsters, Afl-Cio*, 362 NLRB 1392 (2015) ("2015 Order").

In response to the NLRB's contempt Petition, Allied filed an "Answer and Cross-Petition to Dismiss for Lack of Jurisdiction." Dkt. No. 13 ("Motion to Dismiss"). Allied denies NLRB's allegation that it has refused to bargain with the Union in good faith, and in addition, argues that the NLRB lacks statutory jurisdiction over Allied's Newark operations. In its Motion to Dismiss, Allied reasserts a defense it argued (and lost) before the D.C. Circuit and the NLRB: that because Allied's employees are "controlled by or under common control with a carrier or carriers," this matter falls under the jurisdiction not of the NLRB, but of the National Mediation Board ("NMB"), which administers the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*; 2015 Order, 362 NLRB at 1392. According to Allied, a change in the law since the 2017 Judgment was rendered has revived Allied's argument that NLRB lacks jurisdiction.

On August 3, 2021, in response to a request by both parties, the Circuit Court referred this matter to the undersigned, appointed to act as Special Master, "to recommend factual findings and disposition as appropriate based upon the present and any future submissions of the parties." Order, Dkt. No. 1 ("Referral Order").

In a letter dated February 23, 2022, and at a hearing held on April 7, 2022, the parties

---

[1] The bargaining unit consists of "[a]ll full-time and regular part-time Fueling Supervisors/Dispatchers/Operations Supervisors, Maintenance Supervisors (including Parts Supervisors and Parts Persons), and Tank Farm Supervisors employed by the Employer at its Newark Liberty International Airport, Elizabeth, New Jersey location, but excluding all fuelers, mechanics, utility persons, tank farm persons, leads, office clerical employees, managers, guards, and supervisors as defined by the Act." 2015 Order, 362 NLRB at 1392.

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 2

agreed and represented to this Court that the issue raised in Allied's Motion to Dismiss—whether NLRB retains statutory jurisdiction over this dispute—is a threshold question that requires adjudication before proceedings on the underlying issue of contempt. *See* Dkt. No. 11. The parties subsequently filed the Petition and Motion to Dismiss in this matter.[2]  Having reviewed the Petition and the Motion to Dismiss, and the briefing and exhibits filed in support of and opposition to the Motion to Dismiss, the Court now proceeds to its conclusion on jurisdiction.

## II.   BACKGROUND

### A.  Union Certification and Unfair Labor Practices Complaint, 2012-2015

Through a contract with the Port Authority of New York and New Jersey, Allied provides fueling services to approximately fifty airlines at Newark Liberty International Airport. *Allied Aviation*, 854 F.3d at 59. In March 2012, the Union, Intervenor in this case, filed a petition with the NLRB seeking to represent a group of Allied fuel service employees, all holding the title "supervisor." *Id.* Over the course of the next two years, Allied and the Union participated in NLRB proceedings concerning Union representation of these employees, and specifically whether, as Allied argued, they were truly "supervisory" employees and thus exempt from certain collective bargaining laws; or if instead the employees were supervisory in title only, and thus subject to requirements of the National Labor Relations Act, as the Union maintained. On

---

[2] The Referral Order directed the Clerk to "forthwith furnish the Special Master with a certified copy of . . . the above-referenced petition and answer." However, the undersigned never received those certified copies, nor were they filed in this matter. The Court held a hearing on April 7, 2022, and the parties advised the Court that the briefs filed in the Court of Appeals were ready for this Court's consideration. Allied also advised the Court that it intended to seek admission of additional evidence on the question of jurisdiction. On April 8, 2022, the parties caused copies of the briefing to be filed in this Court. On May 3, 2022, the Court approved Allied's request to file a motion for admission of its claimed evidence. The Court further advised the parties that briefing on the question of jurisdiction was complete and the matter was considered submitted. *See* Order Re: Initial Joint Status Report, Dkt. No. 19. As of the date of this Memorandum Opinion, Allied has not filed a motion for admission of additional evidence.

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 3

December 3, 2013, an NLRB panel overruled Allied's objections and certified the Union as the employees' representative. *Id*. at 59-61.

Soon thereafter, on April 22, 2014, the Union initiated an unfair labor practices complaint with the NLRB, claiming that despite the certification, Allied was refusing to negotiate a collective-bargaining agreement, in violation of sections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(1), (5). *See Allied Aviation*, 854 F.3d at 61. In response to the complaint, Allied admitted it was refusing to bargain, but raised several defenses, including, for the first time, that its employees were "indirectly controlled by or under common control with a carrier or carriers to an extent sufficient to invoke the jurisdiction of the National Mediation Board under the Railway Labor Act" and therefore, that it was not subject to the jurisdiction of the NLRB or the NLRA. 2015 Order, 362 NLRB at 1392.

### B. Background Re: Allocation of Jurisdiction Over Labor Disputes in the Transportation Sector

*a. RLA Exemption from NLRA Jurisdiction*

As the D.C. Circuit has noted in a different case involving similar circumstances, "[t]he allocation of jurisdiction over labor disputes between the Railway Labor Act and the National Labor Relations Act warrants a brief explanation." *Am. Sales & Mgmt. Org., LLC v. Nat'l Lab. Rels. Bd.*, 799 F. App'x 1, 2–3 (D.C. Cir. 2020). The NLRA protects the rights of employees to organize and bargain collectively, but expressly exempts employers subject to the RLA. *See Allied Aviation*, 854 F.3d at 61 (citing 29 U.S.C. §§ 151, 157; §§ 152(2)-(3)). Employers subject to the RLA include rail carriers, common air carriers, and—relevant here—"any company which is directly or indirectly owned or controlled by or under common control with any carrier." 45 U.S.C. §§ 151, 181. RLA exemption from NLRA jurisdiction is based on "the central role in the

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 4

national economy of smooth operation of the nation's rail and air carriers," and the importance of avoiding strikes in that sector. *Allied Aviation*, 854 F.3d at 61. The NLRB decides labor disputes that arise under the NLRA; the National Mediation Board, rather than the NLRB, administers the RLA. *Id*.

Frequently, therefore, "when a labor dispute arises involving a company operating in the transportation sector, a threshold question is whether that company is subject to the jurisdiction of the [RLA] or the [NLRA]." *Am. Sales & Mgmt. Org.*, 799 F. App'x at 2–3 (citing *ABM Onsite Servs.-West, Inc. v. NLRB*, 849 F.3d 1137, 1140 (D.C. Cir. 2017) ("*ABM*")). The NLRB and NMB "have, in the absence of any statute addressing the point, jointly developed their own method for determining their mutual jurisdictional question of whether the NLRA or the RLA governs." *ABM*, 849 F.3d at 1140 (citing *United Parcel Serv., Inc. v. NLRB*, 92 F.3d 1221, 1223 (D.C. Cir. 1996)). For matters that come before it, the NLRB has developed a practice of referring close jurisdictional questions to the NMB for an advisory opinion, deferring to its view; but when the NLRB believes a case is clearly controlled by NMB precedent, it will make a jurisdictional determination on its own. *Id*.; *Allied Aviation*, 854 F.3d at 62 ("When presented with a claim of RLA jurisdiction, the Board's stated practice is to refer the parties to the NMB and dismiss the charge or petition in cases in which it is clear the employer is subject to the RLA; to retain cases in which RLA jurisdiction is clearly lacking; and, because the NMB has particular expertise in administering the RLA, to refer close cases of arguable RLA jurisdiction to the NMB for its advisory opinion before the NLRB itself decides the issue."). There is, however, "no statutory requirement that the [NLRB] first submit a case to the NMB for an opinion prior to determining whether to assert jurisdiction." *Allied Aviation* at 62 (citations omitted).

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 5

*b. The NMB's "Function and Control" Test for Determining RLA Exemption*

Over the years, the NMB has developed a "function and control" test consisting of two parts, which must both be met for the NMB to assert jurisdiction under the RLA. First, the NMB considers whether the function the employees perform is one that has been traditionally performed by carrier employees. *ABM,* 849 F.3d at 1142. In this case, there is no dispute that Allied's employees perform a function traditionally performed by carrier employees.

Second, if the work is traditionally that of a common carrier, the NMB determines whether the employer is directly or indirectly owned or controlled by, or under common control with, a carrier or carriers. In determining whether the second part of the test is satisfied, the NMB has adopted an analysis consisting of six factors: (1) the extent of the carrier's control over the manner in which the company conducts its business, (2) the carrier's access to the company's operations and records, (3) the carrier's role in personnel decisions, (4) the degree of carrier supervision of the company's employees, (5) whether company employees are held out to the public as carrier employees, and (6) the extent of carrier control over employee training. *Id*. (citing *Air Serv Corp*., 33 NMB 272, 285 (2006)).

However, it appears that beginning in 2013, in an "unexplained" and "clear departure from precedent," the NMB began applying a novel jurisdictional test, emphasizing and elevating the third of these six factors—carrier control over personnel decisions (particularly discipline and discharge)—over all others. *See ABM*, 849 F.3d at 1142 (citing, *inter alia, Huntleigh USA Corp*., 40 NMB 130, 137 (2013); *Aero Port Servs., Inc*., 40 NMB 139, 143 (2013)). Exercising its customary deference to NMB decisions regarding RLA jurisdiction, the NLRB followed suit, adopting that new standard, also without explanation. *See, e.g., ABM Onsite Servs.--W., Inc. &*

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 6

*Int'l Ass'n of Machinist & Aerospace Workers, Dist. Lodge W24, Loc. Lodge 1005*, 362 NLRB No. 179 (Aug. 26, 2015). An understanding of this change—and subsequent reversion to the original six-factor standard—is key to the jurisdictional dispute now before the Court.

In a case involving baggage handlers at the Portland International Airport, the D.C. Circuit Court held in March 2017, just over a month before the 2017 Judgment in this case, that the NLRB had acted in a manner that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" by "applying a new test to determine whether the RLA applies, without explaining its reasons for doing so." *ABM,* 849 F.3d at 1142 (citing 5 U.S.C. § 706(2)(a)). In *ABM*, the D.C. Circuit reversed the NLRB's conclusion that it had jurisdiction over the employer, because the NLRB had reached that conclusion relying on the NMB's new single-factor (control over personnel) test. The court remanded the dispute to allow the agencies to determine, based upon the prior, longstanding six-factor test, whether the matter was subject to the NLRA or the RLA; or to explain why that test had been altered.

In a subsequent ruling on remand, the NMB, "mindful of its statutory mission," returned to the six-factor test and stated "that the rail or air carrier must effectively exercise a significant degree of influence over the company's daily operations *and* its employees' performance of services in order to establish RLA jurisdiction. *No one factor is elevated above all others in determining whether this significant degree of influence is established.*" *ABM-Onsite Servs.*, 45 NMB 27, 34–35 (Feb. 26, 2018) (emphasis added) ("*ABM II*"). Indeed, the apparently chastened NMB went even further, stating in a footnote that "[t]o the extent that prior [NMB] cases can be read as treating the ability to dictate personnel decisions as required or necessary to establish carrier control, they are overruled." *ABM II*, 45 NMB at 36, n. 2.

The NMB then found that under the proper six-factor test, the RLA (and not the NLRA) governed the dispute. *Id*. The NLRB, exercising its traditional deference, subsequently adopted the NMB's conclusion, and dismissed the union's complaint. *ABM Onsite Servs.-W., Inc.*, 367 NLRB No. 35 (Nov. 14, 2018) ("*ABM III*"). Following up on the NMB's footnote, the NLRB went on to specify which of its own cases had been predicated on the incorrect standard, and were therefore "no longer precedential." Included in this list was the NLRB's 2015 Order in this case, discussed below. *ABM III*, 367 NLRB at *3, n. 6 ("Because the NMB overruled its cases emphasizing carrier control over personnel decisions, the following [NLRB] decisions are no longer precedential to the extent they relied on the overruled NMB cases: . . . *Allied Aviation Service Co. of New Jersey*, 362 NLRB No. 173 (2015).").

**C. Unfair Labor Practices Complaint: NLRB's 2015 Order and Court of Appeals Judgment**

In the instant case, against this backdrop of jurisdictional uncertainty, the NLRB ruled in the Union's favor on its unfair labor practices complaint, and ordered Allied "to cease and desist, to bargain on request with the Union, and, if an understanding is reached, to embody the understanding in a signed agreement." 2015 Order, 362 NLRB at 1392.

On the question of jurisdiction, which Allied raised for the first time in response to the Union's complaint, the NLRB concluded that the NLRA, and not the RLA, governed the dispute.[3] *Id*. In reaching this conclusion, the NLRB took its cue from recent NMB opinions, focusing "on whether the carrier or carriers exercise "'meaningful control over personnel decisions.'" *Id*. (citing, *inter alia, Airway Cleaners, LLC*, 41 NMB 262, 268 (2014) (control exercised is "not the

---

[3] Allied apparently did not request a referral of the question to the NMB.

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 8

meaningful control over personnel decision[s] required to establish RLA jurisdiction"); *Menzies Aviation, Inc.*, 42 NMB 1, 7 (2014) (no jurisdiction where carrier "does not exercise 'meaningful control over personnel decisions'"). The NLRB observed Allied had failed to demonstrate that the airlines at Newark exercised "meaningful control over [Allied's] personnel decisions." 2015 Order, 362 NLRB at 1392.

Critical to the question before this Court, however, *the NLRB did not rest its conclusion solely on the single-factor test.* Instead, the 2015 Order explicitly found that "the evidence of carrier control in the instant case also falls substantially short of the considerations relied upon in [NMB] Member Geale's dissents." The reference to "Member Geale's dissents" is to dissenting opinions in *Airway Cleaners*, 41 NMB at 273-280, and *Menzies Aviation*, 42 NMB at 7-9. In those dissents, NMB Member Geale challenged the NMB's recent adoption of the single-factor test, which elevated the element of "meaningful control over personnel decisions" above all others. Member Geale reviewed the facts before him in light of the traditional six factors, and concluded that RLA jurisdiction existed. In its reference to Member Geale's dissents, the 2015 Order thus acknowledged the two different standards, and found Allied had failed to demonstrate carrier control under either. *See Allied Aviation*, 854 F.3d at 63 ("By contrasting the evidence in this case to the treatment in Member Geale's dissents, the Board acknowledged the relevance of all of the factors and concluded that Allied's evidence fell short even under the traditional six-factor test.").

Allied sought review of the 2015 Order in the D.C. Circuit, and NLRB cross-petitioned for enforcement. The D.C. Circuit Court affirmed the 2015 Order. On the question of jurisdiction under the NLRA, the D.C. Circuit held that "the Board's decision that Allied failed to establish

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 9

the "control" portion of the "function and control" test is legally correct and supported by substantial evidence," and "the record clearly supports the NLRB's exercise of jurisdiction." *Allied Aviation*, 854 F.3d at 62, 63. Allied argued that "the Board misapplied precedent by granting too much weight to a single carrier-control factor —the carrier's role in personnel decisions." *Id*. The *Allied Aviation* court explicitly rejected that argument. "Contrary to Allied's contention, the Board did not rely on only a single factor. The Board's analysis was more extensive." The Circuit Court approvingly quoted the NLRB order, observing that:

> the record evidence fell 'substantially short of the considerations relied upon' in dissents written by Member Geale in [Airway Cleaners and Menzies Aviation]. . . . Those considerations include all six factors relevant to carrier control. . . . By contrasting the evidence in this case to the treatment in Member Geale's dissents, the Board acknowledged the relevance of all of the factors and concluded that Allied's evidence fell short even under the traditional six-factor test.

*Allied Aviation*, 854 F.3d at 63 (citing *Airway Cleaners*, 41 NMB at 267, 274-77 (Geale, M., concurring in part and dissenting in part); *Menzies Aviation, Inc.*, 42 NMB at 7-8 (Geale, M., dissenting)).

Indeed, the court explicitly distinguished the 2015 Order in this case from the NLRB decision it had reviewed and reversed just weeks earlier in *ABM*, in which the court concluded that the NLRB had relied on the wrong, single-factor test. The court noted that in contrast to the employer in *ABM*, here "Allied presented no evidence that it was under contract with any common carrier. . . . Allied presented no evidence that the carriers at Newark Airport hold out Allied employees to the public as their own employees, exercise control over how Allied runs its operations, supervise Allied employees to a degree sufficient to establish control, or exert meaningful control over Allied's personnel decisions." *Allied Aviation*, 854 F.3d at 64 (citing *ABM*, 849 F.3d at 1144). In other words, the D.C. Circuit, like the NLRB, confirmed that the

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 10

NLRB had jurisdiction over the Allied dispute based upon the traditional—and correct—six-factor test. On November 13, 2017, the Supreme Court denied Allied's petition for writ of certiorari. *Allied Aviation Serv. Co. of New Jersey v. N.L.R.B.*, 138 S. Ct. 458, 199 L. Ed. 2d 330 (2017).

### III.   DISCUSSION

**A.  Allied's Motion to Dismiss and Renewed Challenge to NLRB Jurisdiction**

In its Motion to Dismiss filed in response to NLRB's Petition for Contempt, Allied claims "new decisions and facts" occurring since 2015 have "altered" the NLRB's 2015 Order and the Court of Appeals Judgment enforcing that Order.[4] Mot. to Dismiss at 3; Rep. ISO Cross-Pet. to Dismiss at 3, Dkt. No. 15. Allied argues that several intervening decisions in 2018 and 2019 "nullified" the jurisdictional holding in the 2015 Order and consequently the 2017 Judgment. Specifically, Allied points to: (1) the NLRB order in *ABM III*, 367 NLRB at *3, n. 6, discussed above, in which the NLRB opined that certain NLRB decisions, explicitly including the 2015 Order in this case, are "no longer precedential to the extent they relied on the overruled NMB cases"; (2) an NMB advisory opinion, *Allied Aviation Fueling Co. of Texas, Inc.*, 46 NMB 33 (March 19, 2019), finding that Allied's "sister company," which provides fuel service at Dallas-Fort Worth International Airport, was subject to RLA jurisdiction; and (3) NLRB decisions declining to pursue claims against Allied affiliates, expressed in (a) a letter from the NLRB General Counsel declining to pursue an unfair labor practices complaint against Allied Texas, in deference to that NMB advisory opinion (*see* Ex. A to Mot. to Dismiss), and (b) a decision by an

---

[4] Allied repeatedly refers to "new decisions and facts" and "significant changes in both material facts and controlling law" that require reexamination of the jurisdiction question. However, it has offered only purportedly new law and legal opinions; the Court is unable to discern in Allied's motion any "new facts" requiring reconsideration.

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 11

NLRB regional office to dismiss (apparently without written explanation) an unfair labor practices charge brought against another Allied sister company in New York, ("Allied New York"), "after Allied submitted a 43-page position statement to the Region addressing the sole issue of jurisdiction," the inference being that it did so in recognition of a lack of jurisdiction. Mot. to Dismiss at 7.

For the following reasons, the Court concludes that these "intervening decisions" do not overrule or otherwise abrogate either the NLRB's 2015 Order, or the D.C. Circuit Court's 2017 Judgment enforcing that order, and do not alter the conclusion in those decisions that the NLRB has jurisdiction over this dispute.

B. **Doctrine of Issue Preclusion/Collateral Estoppel**

The NLRB first argues that at this stage of these proceedings, Allied is not entitled to relitigate whether the NLRA or the RLA governs Allied's operations, a question already resolved in the 2015 Order and affirmed by the 2017 Judgment. Under the doctrine of collateral estoppel, also known as issue preclusion, "a prior judgment ... foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697–98 (2019) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748–749, (2001)).[5]  Issue preclusion applies if three criteria are met: (1) in the prior litigation, the issue was "actually litigated, that is, contested by the parties and submitted

---

[5] The parties use the term "res judicata" to refer to the doctrine of issue preclusion. "The doctrines of res judicata and collateral estoppel are easily confused because the term "res judicata" is often used to embrace both doctrines. . . . The Supreme Court recently articulated the distinction: 'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Novak*, 703 F.2d at 1308–09 (quoting *Allen*, 449 U.S. at 94). Both doctrines would be applicable in this case, and the Court considers usage of the terms in the context of this opinion to be functionally interchangeable.

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 12

for determination by the court"; (2) the prior issue was "actually and necessarily determined by a court of competent jurisdiction"; and (3) "preclusion in the second trial [does] not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (internal citations omitted). In short, issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "[T]he doctrine of res judicata has application 'to questions of jurisdiction as well as to other issues' [and] it ordinarily precludes a subsequent challenge to a finding that jurisdiction does exist." *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987).

### C. Whether Collateral Estoppel Precludes Relitigation of RLA Jurisdiction

Applying the framework outlined above, the Court concludes that the issue of RLA jurisdiction over Allied's operations was "actually litigated," and "necessarily determined by a court of competent jurisdiction," and that precluding relitigation of the issue under the doctrine of collateral estoppel would not work an "unfairness."

There should be no dispute that the jurisdiction issue was "actually litigated" in the proceedings leading up to and including the Judgment in *Allied Aviation*. In addition, it is undeniable that the finding of NLRB jurisdiction over this dispute, made by both the NLRB and the D.C. Circuit, was necessary to the 2017 Judgment.

The Court also concludes that application of collateral estoppel to prevent relitigation of RLA jurisdiction would not in this instance be unfair. Allied suggests applying collateral estoppel to the jurisdiction issue would be "unfair" for several reasons, but none is availing. Allied's argument that a jurisdictional challenge cannot be waived and can be raised at any point in a

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 13

proceeding misses the mark. As NLRB points out, Allied did not "waive" its argument that the NLRB lacked jurisdiction; it argued that point, and lost. Similarly specious is Allied's criticism of the NLRB for declining to reopen the question of jurisdiction before filing its Petition for Contempt, and its argument that "jurisdiction must be re-established for every unfair labor practice." Rep. at 6. Nothing Allied has cited—not the NLRB manuals outlining its procedures, nor any authority interpreting the relevant statutes—supports Allied's claim that NLRB must first relitigate the underlying merits of its authority, before filing a contempt charge for failure to comply with a final order. To the contrary, such a process would be duplicative, dilatory, unwieldy, and unfair. Moreover, the Court reminds Allied that this litigation does not concern a new unfair labor practices complaint for which jurisdiction must be "re-established"; the parties are still litigating over enforcement of the original complaint, filed over eight years ago.

Likewise, Allied repeatedly complains that the NLRB flouted its own procedures by failing to refer the question of RLA jurisdiction to the NMB, and to allow Allied to "develop a factual record" that might support RLA jurisdiction. *See, e.g.*, Rep. at 6, 8. It is Allied, however, that failed to request a referral to the NMB, or to develop the record, when it had the opportunity. As the D.C. Circuit noted, "[n]ot once during the entire election proceeding did Allied argue that it was subject to the jurisdiction of the RLA rather than the NLRA." *Allied Aviation*, 854 F.3d at 60 ("In fact, when asked directly by the hearing officer in March 2012 whether the company was subject to RLA jurisdiction, counsel for Allied responded, 'Not that I know of. I would have to look into that.' However, it appears that neither during the ensuing five days of hearings nor during the following two years of proceedings before the Board did Allied 'look into' the question or make any mention whatsoever of any objection to the NLRB's jurisdiction."). Indeed, the D.C.

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 14

Circuit observed that "it is plausibly suggested that Allied's RLA jurisdiction argument was forfeited because Allied never argued to the Board that it applied the wrong carrier-control analysis," and Allied undoubtedly waived its right to demand an advisory opinion from the NMB. *Allied Aviation*, 854 F.3d at 62; *see Am. Sales & Mgmt. Org.*, 799 F. App'x at 3 (employer waived right to have NLRB refer jurisdiction question to NMB where it fails to raise the issue).

In all of these arguments, Allied appears to be ignoring entirely that the instant proceeding does not concern the merits of the Union's unfair labor practices complaint, which have already been fully and fairly litigated to a final judgment. The current matter concerns only whether or not Allied has complied with that judgment. Allied's insistence on delaying this years-long process by raising—again—the issue of jurisdiction, serves only to shed light on the extent to which it has in fact acted in good faith in attempting to comply with the NLRB's 2015 Order and the Court of Appeals' Judgment.

### D. Whether the "Change in Law" Exception to Collateral Estoppel Applies

Even when the elements of collateral estoppel are met, however, an exception may be warranted if there has been an intervening "change in [the] applicable legal context." *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (quoting Restatement (Second) of Judgments § 28, Comment c (1980)); *see also Montana v. United States*, 440 U.S. 147, 157–58 (prior judgment was conclusive "[a]bsent significant changes in controlling facts or legal principles" since the judgment). Allied argues that collateral estoppel does not preclude relitigation of the jurisdiction issue resolved in the 2017 Judgment and 2015 Order, because certain decisions issued since then have changed the controlling law on which they were based. Allied is wrong.

The Court acknowledges that there has undeniably been uncertainty in the allocation of

MEMORANDUM OPINION
RE: MOTION TO DISMISS

jurisdiction between the NLRB and the NMB in recent years. The "change" in the law on which Allied relies, however, occurred before the 2017 *Allied Aviation* decision, not after. The D.C. Circuit Court decided *ABM*—the opinion admonishing the NLRB and NMB to return to the traditional six-factor test (or explain why they would not)—several weeks before *Allied Aviation*, not after. *See ABM*, 849 F.3d 1137; *Allied Aviation*, 854 F.3d at 63 (NLRB had properly "acknowledged the relevance of all of the factors and concluded that Allied's evidence fell short even under the traditional six-factor test. . . . The Board's decision is therefore distinguishable from the one we recently considered in *ABM*."). And indeed, as discussed above, both the 2015 Order and 2017 Judgment were decided based upon the correct six-factor test.

Allied relies on observations, contained in dicta in several NLRA and NMB decisions, indicating in Allied's view that the 2015 Order is no longer "good law." None of these decisions has the effect that Allied claims. As discussed more fully above, in *ABM III*, the NLRB stated that its 2015 Order was "no longer precedential to the extent [it] relied on the overruled NMB cases." 367 NLRB at *3, n.6. Notably, the NLRB did not purport to vacate the 2015 Order, but merely to deprive it of precedential value. Moreover, the NLRB did not declare that the 2015 Order is of no precedential value, but that it is not precedential "*to the extent [it] relied on the overruled NMB cases.*" The necessary implication of this qualification is that the part of the order *not* reliant on the overruled cases remains good law; and as noted, in concluding that the NLRB had jurisdiction, the 2015 Order relied on the proper six-factor test, in addition to the overruled personnel test.

Nor do recent NMB and NLRB decisions regarding Allied's sister companies in Texas and New York have the power to abrogate the valid Court of Appeals Judgment concluding that

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 16

the NLRB has jurisdiction over this matter. Allied has not cited any authority for the proposition that an administrative decision has the power to "overrule" a valid federal court of appeals judgment. More importantly, the cited decisions concern affiliated but entirely distinct companies, involving an untold number of distinguishing factors. As the NLRB recently observed, "[b]ecause contracts and local practices might vary in a determinative manner for different employee groups, different operations, and in different locations, the NMB's opinion is based on the record before it in each case." *Oxford Elecs., Inc., et al., Joint Emps. Int'l Union of Operating Engineers Loc. 399, Afl-Cio & Transportation Workers Union of*, 369 NLRB No. 6 (Jan. 6, 2020) (citation omitted). A survey of recent cases demonstrates that in an inquiry as necessarily fact-intensive as the six-factor test, details and distinctions from case to case matter; RLA jurisdiction depends on "the *degree* of influence that a carrier has over discharge, discipline, wages, working conditions and operations," not a black-or-white test. *ABM*, 849 F.3d at 1143 (emphasis added); *see also Am. Sales & Mgmt. Org*, 799 F. App'x at 4 (while "carrier service specifications, audits and performance standards all allow the airlines to exert some control over the nature and quality of their bargained-for services . . . , they primarily serve to clarify the scope of services that [the employer] is obligated to perform rather than controlling the way that [employer] fulfills those obligations. This is distinguishable from cases where the carriers exerted more direct control over staffing decisions and labor costs.").

As the NMB observed in the Allied Texas decision, "The record provided in the instant case stands in contrast to the record provided to the NLRB in *Allied Aviation*." *Allied Aviation Fueling Co. of Texas, Inc.*, 46 NMB at 47. For example, while the NMB found that Allied Texas's operations, "including finance and budget, staffing levels, services to be provided, fees

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 17

and charges" were governed by agreements with a consortium of airline carriers, in this case, in contrast, the D.C. Circuit noted that "Allied presented no evidence that it was under contract with any common carrier," or "that the carriers at Newark Airport . . . exercise control over how Allied runs its operations, supervise Allied employees to a degree sufficient to establish control, or exert meaningful control over Allied's personnel decisions." *Id*.; *Allied Aviation*, 854 F.3d at 64. Accordingly, the "new law" exception to the doctrine of collateral estoppel does not apply in these circumstances.

### IV.   CONCLUSION

For the foregoing reasons, the Court concludes that the NLRB retains jurisdiction over this dispute under the NLRA.

The stay imposed pending resolution of the jurisdiction question is hereby lifted, and the Court intends to proceed to the merits of the NLRB's Petition for Adjudication in Civil Contempt. To that end, the parties are directed to meet and confer and present the Court with a proposed discovery plan, no later than June 6, 2022. The plan shall include the proposed number of depositions, a discovery deadline, and deadlines for anticipated motion practice and other pre-hearing matters. The parties shall also advise the Court as to an expected length of a hearing, and to provide the Court with no fewer than three proposed hearing dates.

///

///

MEMORANDUM OPINION
RE: MOTION TO DISMISS

- 18

Given that this matter has been pending for nearly a decade, the Court strongly urges the parties to agree on a reasonably expedited schedule, or to be prepared to have the Court impose one.

DATED this 16th day of May, 2022.

*/s/ Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge